UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARTIN TONY SOLOMON,

    Plaintiff,

v.                                          Case No. 2:07-cv-102
                                            HON. R. ALLAN EDGAR
PATRICIA CARUSO, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Martin Solomon, an inmate at the Bellamy Creek Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia Caruso, Warden Jeri-Ann Sherry, I. McDonald, Unknown Derusha, Resident Unit Officer J. Eberts, Resident Unit Officer Unknown Anderson, Resident Unit Officer Unknown Eicher, Resident Unit Officer E. Warner, Assistant Deputy Warden Mitch Perry, Resident Unit Officer Unknown Brown, Resident Unit Manager Unknown Mansfield, Assistant Resident Unit Supervisor T. Cory Spiker, Acting Assistant Resident Unit Supervisor Unknown Kinarz, Grievance Coordinator Jeff Case, Step III Grievance Coordinator Jim Armstrong, Resident Unit Officer Unknown McBryde, Resident Unit Officer T. Ross, Resident Unit Officer Unknown Bennett, and Resident Unit Officer LaCoursiere. On initial screening, the court dismissed the complaint and plaintiff appealed. The Sixth Circuit affirmed dismissal of defendants Caruso and Sherry, and the Eighth Amendment claim. The Sixth Circuit concluded that plaintiff stated a retaliation claim that should proceed on remand.

Plaintiff alleges that he arrived at the Chippewa Correctional Facility (URF) on June 28, 2005, and was called to the property room. At this point, an unknown officer confiscated plaintiff's law books, Uniform Commercial Code (UCC), legal documents, and related materials. Plaintiff sent an informal complaint to defendant Sherry regarding the confiscation. On July 4, 2005, plaintiff was reviewed on a Notice of Intent (NOI) by Sergeant Robinson, which indicated that the property was contraband and that plaintiff had received a hearing on July 3, 2005. Plaintiff explained to Robinson that he had not received a hearing as reported by defendant McDonald in the NOI. Plaintiff requested a hearing and the return of his property. Robinson told plaintiff that the UCC material was in fact contraband, and that it would not be returned regardless of any hearing. Plaintiff requested a grievance and was told that if he pursued the issue, staff would write plaintiff major misconduct tickets and harass him.

On July 4, 2005, plaintiff filed a grievance on defendants Sherry and McDonald, as well as Sergeant Robinson. On July 29, 2005, plaintiff was interviewed on the grievance by defendant Perry, who showed plaintiff a NOI indicating that the hearing occurred on July 13, 2005. Plaintiff argued that he had not received a hearing. Defendant Perry then informed plaintiff that because he insisted on accusing staff of falsifying documents, the interview was over. On August 9, 2005, plaintiff received his step I response, which indicated that the hearing date was a typographical error and that there was no negative impact on plaintiff. Plaintiff's step II appeal was denied on August 31, 2005, and his step III appeal was denied by defendant Armstrong on March 3, 2006. Plaintiff then sent a letter complaining about the step III response to defendant Armstrong, along with a copy of the NOI, but plaintiff did not receive a response.

Plaintiff claims that since filing his step I grievance, he has been subjected to numerous falsified misconduct tickets by staff as the result of a conspiracy to retaliate against him

for his use of the grievance system. On July 19, 2005, plaintiff was called to the Lime Unit Office to speak to defendant Case. When plaintiff returned to the unit, he noticed that it was chow time, so he asked permission to report for chow. Defendants Eberts, Kinarz, Spiker and Mansfield told plaintiff that he would not be allowed to go to chow because he had filed a grievance. Plaintiff then filed a grievance on URF administration for initiating a retaliatory conspiracy against plaintiff. Assistant Deputy Warden MacLaren and defendant Mansfield denied plaintiff's grievance on July 27, 2005, and plaintiff's step II grievance was also denied.

On July 19, 2005, defendant McBryde informed plaintiff that since he liked to file grievances he was going to give plaintiff a false misconduct for leaving his key in his cell. On July 28, 2005, plaintiff received three days top lock. On July 29, 2005, defendant Derusha retaliated against plaintiff by filing a false misconduct on plaintiff for being "out of place" by using the bathroom. On August 5, 2005, defendant Eberts falsified a misconduct on plaintiff, telling him that this is what happens when prisoners file grievances. On August 7, 2005, defendant Warner conducted the misconduct hearing and informed plaintiff that he was giving him four days top lock. Defendant Warner also told plaintiff that he should stop writing grievances. Plaintiff contends that defendant Warner also falsified a misconduct on him, stating "you black ass grievance writing mother fucker, you will be on sanction for a long period of time." Plaintiff complained to defendant LaCoursiere, who falsified his statement on a hearing report by saying that plaintiff had left his key in the room. Defendant LaCoursiere told plaintiff that he would dismiss the misconduct if plaintiff stopped writing grievances.

Defendant Eicher falsified a misconduct report on plaintiff for "major out of place" for using the bathroom. When plaintiff spoke to the hearings investigator, he was told that he needed to stop filing grievances. Plaintiff told the hearing investigator that the Lime Unit cameras would

show that defendant Eicher had lied, but the hearing investigator stated that he would make sure that there was no video footage. Plaintiff was found guilty of the misconduct. On August 16, 2007, defendant Anderson falsified a major misconduct on plaintiff. When plaintiff asked what the misconduct ticket was for, defendant Anderson stated, "your damn black ass writing them grievances." Defendant Ross told plaintiff that he could not use the bathroom because he liked to file grievances and wrote a misconduct on plaintiff for being out of place. Plaintiff was found guilty of the major misconducts by defendants Anderson and Ross.

Plaintiff alleges that he sent correspondence to the hearing investigator asking for a copy of the misconducts, to no avail. Plaintiff subsequently filed several more grievances asserting retaliation, civil conspiracy, and inhumane treatment. Plaintiff claims that defendants violated his constitutional rights and seeks compensatory and punitive damages, as well as injunctive relief.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.

1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Perry, Case, Armstrong, Brown, Mansfield, Spiker, Kinarz and Bennett claim that they lacked personal involvement in the underlying unconstitutional conduct alleged by plaintiff. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing

that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendants Perry, Case and Armstrong were not involved in the alleged retaliatory conduct and their only roles in this action involve the denial of administrative grievances or alleged failure to act. Defendants cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Similarly, plaintiff has asserted no actionable allegations against defendants Brown, Mansfield, Spiker, Kinasz or Bennett. Plaintiff has not shown that these defendants failed in a duty that they owed plaintiff or otherwise took any wrongful action against plaintiff. Accordingly, it is recommended that defendants Perry, Case, Armstrong, Brown, Mansfield, Spiker, Kinasz and Bennet be dismissed for lack of personal involvement.

Plaintiff has asserted that defendants filed false misconduct tickets against him in retaliation for filing grievances. The remaining defendants Derusha, Eberts, Anderson, Eicher, Warner, McBryde, Ross and LaCoursiere are implicated. All of these defendants have filed affidavits in support of their motion for summary judgment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant Derusha issued plaintiff a minor misconduct violation on July 29, 2005, for being out of place. Plaintiff was in the A wing bathroom when it was temporarily closed for cleaning. That bathroom is closed every morning at that time for cleaning and it was announced over the PA system that the bathroom was closing in five minutes and a second announcement was made when the bathroom was closed. Plaintiff has not shown that defendant Derusha took retaliatory action in issuing plaintiff a minor misconduct ticket for being out of place. Defendant McBride issued plaintiff a minor misconduct ticket for violating housing rules after plaintiff locked himself out of his cell. Plaintiff has not shown that defendant McBride took retaliatory action by issuing this minor misconduct.

Defendant Anderson wrote plaintiff a misconduct ticket for being out of place. Defendant Anderson does not have any specific recollection of writing the ticket. Plaintiff stated that defendant Anderson made the statement "I guess you already know that you got another major misconduct." Defendant Anderson states that he is unaware of plaintiff filing any grievances against him or other staff members before the issuance of the misconduct ticket. Similarly, defendant Ross indicates that he was unaware of plaintiff's grievance filings and further indicates that in the correctional setting it is matter of course for prisoners to file grievances. Unless a grievance is written against him, defendant Ross states that he would be unaware of any specific grievance filed by a prisoner. Defendant Ross indicates that he would have told plaintiff he could not use the restroom if plaintiff was on toplock restriction and had already been out his cell in the last hour. Defendant Ross did write an out of place ticket against plaintiff on July 14, 2005. Defendant Ross believes that he wrote the ticket because plaintiff was on toplock status and he had no permission to be out of his cell.

Defendant Eicher issued plaintiff a major misconduct violation for being out of place on August 8, 2005. Defendant Eicher stated that he wrote the ticket because he observed plaintiff violating the prison rule. Defendant Warner acted as a hearing officer for one of the misconduct tickets. He attests that plaintiff became very agitated at the hearing. Defendant Warner stated that it was substantiated that plaintiff violated posted rules. Plaintiff refused to sign the hearing report.

Defendant Eberts denies that he refused to provide plaintiff with a meal because he was called to be interviewed on a grievance. Defendant Eberts does not recall being interviewed as a result of a grievance that plaintiff filed. However, defendant Eberts states that he never denied plaintiff a meal at any time. Defendant Eberts issued a minor misconduct to plaintiff for violating a posted rule. Plaintiff was found guilty of the misconduct. Defendant Eberts further states that

prison grievances against staff are a common occurrence. Specific grievances filed against staff members are not something that defendant Eberts notices.

Defendant LaCoursiere indicates that he conducted hearings on two minor misconducts. He found plaintiff guilty on each ticket. Plaintiff has asserted that defendant LaCoursiere falsified the hearing reports. Defendant LaCoursiere denies that he falsified the hearing reports. Plaintiff has presented no evidence which establishing that defendant LaCoursiere falsified a hearing report.

Plaintiff has asserted that each of these defendants agreed to conspire against plaintiff and retaliate against plaintiff for the filing of grievances against three corrections officers not named as defendants in this action. The misconducts that plaintiff received, mostly minor for being out of place, all resulted in guilty findings by the hearing officers. Plaintiff received top lock restrictions as a result of the guilty findings. Plaintiff has not shown that the misconduct tickets that he received were unjustified. Further, plaintiff has not shown that defendants took any retaliatory action in issuing plaintiff the misconducts or that there exists any relationship between a specific misconduct ticket and his grievance filings. In the opinion of the undersigned, plaintiff has failed in his burden of overcoming defendants' motion for summary judgment.

Defendant McDonald allegedly was involved in denying plaintiff a hearing on his contraband UCC materials. Plaintiff alleges that his due process rights were violated. Defendant McDonald attests that Sergeant Michael Robinson reviewed the NOI to conduct an Administrative Hearing on July 4, 2005, at around 6:16 AM. The hearing date and NOI were not falsified. A computer entered the hearing date portion of the NOI. There was a problem with the first computerized form used and therefore a new NOI was issued. Defendant McDonald attests that he has no other knowledge regarding the subject matter of plaintiff's complaint.

Defendants argue that plaintiff's due process claims are barred by the statute of limitations. Plaintiff first set forth his due process claims in an amended complaint filed on October 9, 2008. Plaintiff alleges that his due process rights were violated in July, 2005. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. Further, it is well-established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir.1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, *2 (6th Cir. June 17, 2002).

Clearly, the statute of limitations period ended before plaintiff filed his amended complaint. The new claim would be permissible and not barred by the limitations period if the new claim "relates back" to the date of the original complaint. Fed.R.Civ.P.15(c). In the opinion of the undersigned, plaintiff's amended complaint asserting a due process claim was untimely. Plaintiff has not explained why he failed to assert his due process claim in a timely manner in his original complaint. Moreover, plaintiff cannot show that his due process rights were violated or that defendant McDonald had anything to do with the alleged due process deprivation.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motions for summary judgment. Accordingly, it is recommended that defendants' motions for summary judgment (Docket #44 and #87) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting defendants' motions for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 31, 2009